# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William Watt,                                      :
                Petitioner           :
                                       :
             v.                                   :   No. 53 C.D. 2015
                                       :   Submitted: July 24, 2015
Workers' Compensation Appeal              :
Board (Boyd Brothers Transportation),     :
               Respondent           :


BEFORE:   HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
               HONORABLE ROBERT SIMPSON, Judge
               HONORABLE JAMES GARDNER COLINS, Senior Judge


**OPINION**
**BY JUDGE SIMPSON**              **FILED: September 15, 2015**


        William Watt (Claimant) asks whether the Workers' Compensation Appeal Board (Board) erred in affirming a Workers' Compensation Judge's (WCJ) decision, which denied and dismissed his claim petition for lack of jurisdiction. Claimant contends the WCJ erred in finding his employment was not principally localized in Pennsylvania. Claimant also argues his employment contract, which stated his employment was principally localized in Alabama, is unenforceable and against public policy, and that Section 305.2(d)(5) of the Workers' Compensation Act (Act)[1] is unconstitutional. Upon review, we affirm.

---

[1] Act of June 2, 1915, P.L. 736, added by the Act of December 5, 1974, P.L. 782, 77 P.S. §411.2(d.5).

## I. Background

Claimant, an interstate truck driver, filed a claim petition against his employer, Boyd Brothers Transportation (Employer), alleging he sustained a work injury in New Jersey. Employer denied the material averments. As a matter of further defense, Employer asserted Pennsylvania lacked jurisdiction because Claimant was not injured or hired in Pennsylvania, and he is receiving workers' compensation benefits in Alabama pursuant to the terms of his employment contract. Hearings before a WCJ ensued.

In support of his claim petition, Claimant testified he was employed as a truck driver for Employer from November 29, 2010, until April 12, 2011. On April 12, 2011, while untarping a cargo load, he felt pain running from the back of his right shoulder into his right arm and down to the fingertips of his right hand. Since the injury, Claimant has not returned to work for Employer in any capacity. He receives workers' compensation benefits through Alabama's workers' compensation system. WCJ's Op., 9/10/13, Finding of Fact (F.F.) No. 2.

Claimant further testified he is a Pennsylvania resident, and he resided here his entire life, except for three years in the 1980s. Claimant learned Employer hired student drivers on the internet. He completed an online application on his personal computer in Pennsylvania. After passing his driver's test to obtain his CDL license, Claimant received a phone call from Employer's representative. The representative scheduled Claimant for orientation in Ohio. She advised Employer would pay him a rate of $400 per week during orientation and training, and $0.36

2

per mile thereafter. Claimant then received an email confirming orientation beginning November 20, 2010. F.F. Nos. 3, 4.

Claimant attended orientation in Ohio. During orientation, Employer provided training and required him to take various tests. Employer also provided Claimant with a packet of documents, including a document titled "Workers' Compensation Agreement" (WC Agreement), which he signed. Claimant admitted he read the documents before signing them. On November 24, 2010, Claimant completed his orientation, and he returned to Pennsylvania for the Thanksgiving holiday. On November 29, 2010, Claimant began driving for Employer. F.F. Nos. 5, 6.

Claimant further testified that, during the period of his employment, he kept daily logs of his trips as required by the regulations of the U.S. Department of Transportation. He drove in the state of Alabama on approximately four occasions. According to Claimant's calculations, of a total 35,924 miles driving during employment, he drove:

> 6196 miles in Pennsylvania
> 5031 miles in Virginia
> 4689 miles in Ohio
> 2346 miles in Tennessee
> Lesser amounts in 22 other states

F.F. No. 7. Of a total of 678.25 hours spent driving his truck for Employer, Claimant calculated he spent:

> 128 hours driving in Pennsylvania
> 80.75 hours driving in Ohio
> 64.75 hours driving in Virginia

3

42 hours driving in Tennessee
37 hours driving in Maryland
34.75 hours driving in West Virginia
33.5 hours driving in Indiana
31.25 hours driving in Texas
Lesser amounts of hours driving in 18 other states.

F.F. No. 7.

In opposition to the claim petition, Employer presented extensive documentary evidence, including the WC Agreement initialed and signed by Claimant. In the WC Agreement, Employer and Claimant agreed, in pertinent part, "[t]hat they are subject to the worker's compensation laws of the State of Alabama." F.F. No. 8 (quoting WC Agreement at ¶1). In addition, they agreed Employer "is a qualified self-insured pursuant to the regulations of the Alabama Department of Industrial Relations and, as such, administers all worker's compensation claims from its Worker's Compensation Offices in Clayton, Alabama ...." Id. (quoting WC Agreement at ¶2). They further agreed Claimant was "hired in Clayton, Alabama after completing the appropriate interview, driving examination, written examination, physical examination and any other pre-employment requirements." Id. (quoting WC Agreement at ¶3).

Significant to our disposition, Employer and Claimant agreed all workers' compensation claims for on-the-job injuries "shall be exclusively governed by the workers' compensation laws of the State of Alabama. Further, [Claimant's] agrees with [Employer] that, for purposes of worker's compensation, [Claimant's] employment is principally localized within the state of Alabama and that the company's principle [sic] place of business is Clayton, Alabama." Id.

4

(quoting WC Agreement at ¶6). Claimant's place of residence shall have no effect on the WC Agreement. Id.

In addition, Employer presented the deposition testimony of Pamela Casey, Employer's student recruiter (Recruiter) and Betty A. Nix, Employer's director of recruiting (Director). Recruiter testified she received an online driver application from Claimant in November 2010. After reviewing the application, she contacted him by phone to obtain his driver's license number. During the conversation, Claimant informed her he would soon complete driving school and receive his commercial driver's license. Recruiter advised him that before he is officially hired, he must "clear orientation." F.F. No. 10. She scheduled him for orientation in Ohio beginning on November 20, 2010. Id.

Director testified she welcomed Claimant to orientation, but she did not advise him he was hired. Director interviewed Claimant from her office in Clayton, Alabama, during his Ohio orientation. She explained, in order to be hired as a driver for Employer, an applicant must successfully complete the orientation process, which includes passing a road test, a physical agility test, a drug test, and other written tests, over a period of five days. F.F. Nos. 12-14.

Employer also presented the deposition testimony of Michael W. Vines, its field recruiting manager (Manager). Manager testified that, before rising to the position of manager in December 2012, he was Employer's orientation instructor in Ohio. Manager confirmed Claimant began orientation with a group of applicants on November 20, 2010. Manager testified he routinely wrote the first

5

day of orientation on a dry erase board in the classroom as well as the date of hire for the successful applicants at the start of orientations. With regard to Claimant's orientation group, Manager wrote November 24, 2010, as date of hire. When asked why he wrote the dates on the board at the beginning of orientations, he testified:

> For this reason. We want to make sure that the students are aware that they do have to pass the tests before they are hired and typically it takes all week to complete all the tests. So the company policy is that the hire date always falls on the fifth day of orientation.

F.F. No. 16.

Manager continued that, during the orientation process for Claimant's group, he read and explained the WC Agreement to them. Afterwards, he asked the applicants if they had any questions, and then he requested them to initial and sign the WC Agreement. F.F. No. 17.

According to Manager, Claimant passed all tests required for employment. He testified Employer hired Claimant on November 24, 2010. F.F. No. 18.

Finally, Employer presented the deposition testimony of Charles Joseph Ferone, its director of tax for operating tax systems (Tax Director).[2] He retrieved Claimant's mileage for the period between November 29, 2010 and April

---

[2] Employer also presented the deposition testimony of Betty Jane Adams, who performs fuel management services for Employer. Her testimony is not relevant to this proceeding.

9, 2011, based on dispatch information. He calculated that of 34,581 total miles, Claimant drove:

> 5035.9 miles in Virginia
> 4721.4 miles in Ohio
> 4710.6 miles in Pennsylvania
> 2301.1 miles in Tennessee
> 2032.8 miles in Maryland
> Lesser amounts in 21 other states and the District of Columbia.

F.F. No. 21.

The WCJ accepted the testimony of Recruiter, Director, and Manager as "competent, credible, and worthy of belief, based upon the consistency of their testimony despite sequestration at the times of their deposition, and also because of their obvious knowledge and familiarity with the policies and procedures followed by [Employer] in recruiting, testing and hiring drivers for its motor vehicles." F.F. No. 22. The WCJ accepted Claimant's testimony relating to the events and circumstances leading to his hiring, but only to the extent it was consistent with the credited testimony of Employer's witnesses. The WCJ credited Claimant's testimony and records regarding miles and hours logged, and he rejected Tax Director's testimony and evidence to the contrary.

Based on the credited, competent evidence, the WCJ found Claimant sustained a work injury in the course of his employment with Employer in New Jersey. Claimant worked for Employer under a contract of hire entered into in Ohio. However, because the parties agreed in the WC Agreement that Employer hired Claimant in Alabama and that his employment was principally localized there, the WCJ was "constrained to find as fact that [Claimant's] employment was

7

principally localized in the State of Alabama" for purposes of the Act. F.F. No. 23. On this basis, the WCJ concluded he lacked jurisdiction over Claimant's claim petition. Thus, the WCJ denied and dismissed the claim petition. Claimant appealed to the Board, which affirmed.

## II. Issues

On appeal,[3] Claimant contends the WCJ's finding that his employment is principally localized in Alabama is not supported by substantial and competent evidence of record. According to Claimant, the totality of the facts lead to the inescapable conclusion that his employment was principally localized in Pennsylvania because he lived in Pennsylvania, and he worked in Pennsylvania more than any other state. Claimant also asserts the WCJ erred by relying on the WC Agreement in determining Claimant's employment was principally located in Alabama. Claimant maintains the WC Agreement's choice of law provision is unenforceable because it violates public policy. Finally, he argues Section 305.2(d)(5) of the Act is unconstitutional. More particularly, he claims this provision violates the Full Faith and Credit Clause of Article IV, Section 1 of the U.S. Constitution.

## III. Discussion
### A. Principally Localized in Pennsylvania

First, Claimant contends the WCJ's finding that his employment was principally localized in Alabama is not supported by substantial evidence. Despite

---

[3] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. Dep't of Transp. v. Workers' Comp. Appeal Bd. (Clippinger), 38 A.3d 1037 (Pa. Cmwlth. 2011).

8

his agreement with Employer, he maintains that his employment was principally localized in Pennsylvania, not Alabama. According to Claimant, the facts clearly establish he lived in Pennsylvania, and he spent more time working in Pennsylvania for Employer than any other state. Thus, Claimant asserts he is entitled to benefits pursuant to Subsection 305.2(a)(1) of the Act, 77 P.S. §411.2(a)(1).

Section 305.2(a)(1) of the Act provides that an employee who suffers an injury outside of Pennsylvania shall be entitled to benefits that he "would have been entitled to ... had such injury occurred within this State" provided that at the time of his injury "[h]is employment is principally localized in this State."[4]

A claimant's employment is "principally localized" in this or another state when:

> (i) his employer has a place of business in this or such other state and he regularly works at or from such place of business, or (ii) having worked at or from such place of business, his duties have required him to go outside of the State not over one year, or (iii) if clauses (1) and (2) foregoing are not applicable, he is domiciled and spends a substantial part of his working time in the service of his employer in this or such other state.

---

[4] In addition, an employee who suffers an injury outside of Pennsylvania shall be entitled to benefits if "[h]e is working under a contract of hire made in this State ..." and other conditions are met. 77 P.S. §411.2(a)(2)-(4). As the WCJ found the contract of hire was made in Ohio, not Pennsylvania, and the parties do not challenge this finding, the only applicable section is subsection (1).

9

Section 305.2(d)(4) of the Act, 77 P.S. §411.2(d)(4) (emphasis added). In determining whether a claimant's employment is principally localized in Pennsylvania, the claimant must show he worked from Pennsylvania "as a rule, not as the exception." Atkins v. Workmen's Comp. Appeal Bd. (Geo-Con, Inc.), 651 A.2d 694, 699 (Pa. Cmwlth. 1994).

Claimant concedes neither clause (i) or (ii) of Section 305.2(d)(4) of the Act are applicable. Pet'r's Br. at 24. Instead, he maintains his employment was principally located in Pennsylvania solely under clause (iii). Although there is no dispute that Claimant was domiciled in Pennsylvania, the issue is whether Claimant spent a substantial part of his working time in Employer's service in Pennsylvania.

In this regard, Claimant maintains he kept his truck in Pennsylvania, and Employer occasionally dispatched him from his home in Pennsylvania. In addition, the WCJ credited Claimant's testimony and documentary evidence in the form of daily trip logs and found:

> [C]laimant calculated that of a total 35,924 miles driven during the period of his employment with [Employer], he drove 6,196 miles in Pennsylvania, 5,031 miles in Virginia, 4,689 miles in Ohio, 2,346 miles in Tennessee, and lesser amounts of miles in a total of twenty-two other states. In addition, [Claimant] also calculated that of a total 678.25 hours spent driving his truck for [Employer], he spent 128 hours driving in Pennsylvania, 80.75 hours driving in Ohio, 64.75 hours driving in Virginia, 42 hours driving in Tennessee, 37 hours driving in Maryland, 34.75 hours driving in West Virginia, 33.5 hours driving in Indiana, 31.25 hours driving in Texas, and lesser

10

amounts of hours driving in a total of eighteen other states.

F.F. No. 7.  Based on this evidence, he claims the record clearly supports a determination that his employment was principally localized in Pennsylvania under Section 305.2(d)(4)(iii) of the Act.

However, contrary to Claimant's assertions, this evidence does not support a finding that he spent "a substantial part of his working time" in Pennsylvania.  Rather, Claimant spent only a fraction of his total time and miles in Pennsylvania as these pie charts based on F.F. No. 7 illustrate:





**Hours**

- PA 19%
- VA 12%
- OH 10%
- TN 6%
- MD 5%
- WV 5%
- IN 5%
- TX 5%
- Other States 33%

Although Claimant may have spent more time and driven more miles in Pennsylvania than any other state, he did not spend "a substantial part of his working time" in Pennsylvania. Comparatively speaking, Claimant spent only a small percentage more in Pennsylvania than some of the other high totaling states, like Virginia and Ohio. Stated otherwise, he did not work from Pennsylvania "as a rule." See Atkins, 651 A.2d at 699. Therefore, the WCJ did not err in concluding Claimant's employment was not "principally localized" in Pennsylvania.

## B. WC Agreement

Next, Claimant contends the WCJ erred in relying on the WC Agreement in reaching his determination that Claimant's employment was principally localized in Alabama. Although Claimant admits he agreed his

12

employment was principally localized in Alabama in the WC Agreement, he maintains WC Agreement's choice of law provision is unenforceable because he would otherwise be entitled to coverage under the Act. According to Claimant, the WC Agreement's choice of law provision constitutes a waiver of his statutory rights under the Act. An agreement between an employer and an employee cannot diminish the applicability of the Act. As such, the WC Agreement violates public policy and the humanitarian objectives of the Act, and it cannot be enforced. In support, Claimant relies on McIlvaine Trucking, Inc. v. Workers' Compensation Appeal Board (States), 810 A.2d 1280 (Pa. 2002), and Robert M. Neff, Inc. v. Workmen's Compensation Appeal Board (Burr), 624 A.2d 727 (Pa. Cmwlth. 1993).

Pursuant to Section 1921(b) of the Statutory Construction Act of 1972, 1 Pa. C.S. §1921(b), "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Section 305.2(d)(5) of the Act, 77 P.S. §411.2(d)(5), provides, with emphasis added:

> An employee whose duties require him to travel regularly in the service of his employer in this and one or more other states may, by written agreement with his employer, provide that his employment is principally localized in this or another state, and, unless such other state refuses jurisdiction, such agreement shall be given effect under this act.

Our Supreme Court, in interpreting this section, concluded an employee may enter into a written agreement establishing where the employee's employment is principally localized when an employee's duties require him to

13

travel regularly in Pennsylvania and one or more other states. McIlvaine. However, the Court also held an agreement that confers exclusive jurisdiction to another state is unenforceable when the work injury occurs in Pennsylvania. Id. Notwithstanding, when an injury occurs outside the territorial limits of Pennsylvania, as in the case here, such an agreement may be enforced provided the parties agree that employment is principally located in another state. See id.; see also 77 P.S. §411.2(d)(5).

In McIlvaine, the claimant, an interstate truck driver, and his employer entered into a contract of hire in which they agreed West Virginia's workers' compensation laws applied to all claims for work-related injuries. The claimant worked in several states, including Pennsylvania. He was injured while working for the employer in Pennsylvania and sought benefits under the Act. The employer opposed the petition on the grounds the WCJ lacked jurisdiction. On appeal, our Supreme Court held the choice of law agreement was unenforceable because it violated public policy. The Court explained the Act explicitly applies to "all injuries occurring within this Commonwealth." Id. at 1282 (quoting Section 101 of the Act, 77 P.S. §1). Even though Section 305.2(d)(5) of the Act allows parties to enter into choice-of-law agreements when the employee's job duties require interstate travel, the Court opined the parties may not "overcome the Act's coverage pertaining to a subsequent, in-state injury." Id. at 1286 (emphasis added). Because the claimant was injured in Pennsylvania, the selection of West Virginia law did not trump application of the Act. Id.

14

In <u>Neff</u>, the employer's principal place of business was Ohio, but the claimant worked for the employer solely at its Pennsylvania location. At the time of hire, the claimant signed an agreement providing Ohio's workers' compensation law was the exclusive remedy for any work-related injury claim. The employer did not carry Pennsylvania workers' compensation insurance, and it did not file a certificate documenting coverage in another state.

The claimant was injured while working in Pennsylvania. Although the claimant received workers' compensation benefits from Ohio for the injury, he also sought benefits in Pennsylvania. The employer contested the Pennsylvania claim based on the parties' agreement designating Ohio law and on Section 305.2(b)'s authorization of such agreements.

On appeal, we explained the Commonwealth has a substantial interest in the welfare and subsistence of its disabled workers. <u>Neff</u>.

> In enacting [Section 305.2], the General Assembly provided that an injured employee <u>otherwise covered by the Act remains covered</u> no matter where his or her employer is principally localized. This furthers the overall purpose of the Act to provide benefits to employees who suffer work-related injuries resulting in a loss of earnings, and the Commonwealth's interest in insuring that the benefits received by its disabled workers are sufficient to sustain them during the duration of their disability.

<u>Neff</u>, 624 A.2d at 731 (footnote omitted, emphasis added). We opined, "[t]o hold otherwise would permit employers to require applicants and employees to waive statutory rights to obtain benefits under the Act." <u>Id.</u> at 732. Because the claimant

15

was injured while working in Pennsylvania, we determined the claimant remained entitled to all compensation and medical benefits available under the Act, regardless of where Employer was insured or what the parties agreed.

In Creel v. Workmen's Compensation Appeal Board (Overland Express, Inc.), 643 A.2d 784 (Pa. Cmwlth. 1994), the claimant, who traveled regularly for work in Pennsylvania and other states, sought benefits for an out-of-state work injury under the Act. At the time of hire, the claimant executed an agreement stating his employment was principally localized in Indiana, and Indiana law would apply to any work injuries. On appeal from the denial of benefits, this Court held the claimant was not entitled to benefits pursuant to Section 305.2(d)(5) of the Act because the claimant did not work primarily in Pennsylvania or any other state, and he agreed his employment was principally located in Indiana. Because Indiana accepted jurisdiction over the claim, we determined the claimant was not entitled to benefits under the Act.

Here, Claimant regularly traveled in Pennsylvania and other states for Employer; he signed an agreement that his employment was principally located in Alabama; and, he was injured in New Jersey. Significantly, unlike the claimants in McIlvaine and Neff, Claimant was not injured in Pennsylvania. Rather, like the claimant in Creel, Claimant was injured outside the boundaries of Pennsylvania. McIlvaine and Neff hold that Section 305.2(d)(5) pertains to injuries occurring *within* Pennsylvania, not extraterritorially.

16

Notwithstanding this distinction, Claimant asserts <u>McIlvaine</u> and <u>Neff</u> should be extended to his situation because he otherwise qualifies for coverage under Section 305.2(a) of the Act. However, as discussed above, Claimant's employment was not principally localized in Pennsylvania. Consequently, he was not otherwise qualified for benefits under the Act. Moreover, Alabama did not refuse jurisdiction over Claimant's workers' compensation claim.[5]

Under the facts presented here, the WC Agreement did not abridge Claimant's rights under the Act or otherwise violate public policy. Therefore, the WC Agreement must be given effect. <u>See</u> <u>McIlvaine</u>. We conclude the WCJ did not err in relying on the WC Agreement in determining Claimant's employment was principally localized in Alabama.

## C. Constitutionality

Lastly, Claimant contends Section 305.2(d)(5) of the Act is unconstitutional. Specifically, he maintains the provision violates the Full Faith and Credit Clause of the U.S. Constitution. He claims there are not enough significant or aggregation of contacts to Alabama to outweigh Pennsylvania's interest making the choice of law fundamentally unfair to Claimant. In addition, he asserts Section 305.2(d)(5) is contrary to the overall purpose of the Act and at odds with the Commonwealth's interest in ensuring that benefits received by its disabled workers are sufficient to sustain them during the duration of their disability.

---

[5] In fact, Claimant admits he applied for and received benefits from Alabama's workers' compensation system for his work injury. <u>See</u> Pet'r's Br. at 32.

It appears that Claimant presents both a facial and as-applied constitutional challenge to Section 305.2(d)(5).  See Kepple v. Fairman Drilling Co., 615 A.2d 1298 (Pa. 1992) (a facial challenge seeks to invalidate the section entirely, whereas an as-applied challenge seeks to prevent application of the section under the factual circumstances before the Court.).  Insofar as Claimant presents a facial challenge, Claimant did not notify the Attorney General of Pennsylvania as required by Rule 521(a) of the Pennsylvania Rules of Appellate Procedure.[6]  See In re Estate of Cascardo, 861 A.2d 884 (Pa. 2004); Kepple. Consequently, Claimant waived his facial constitutional challenge.  Kepple (the failure to notify the Attorney General of a facial constitutional challenge to a statute results in the waiver of that issue).  To the extent Claimant structured his constitutional challenge as an as-applied challenge, it fails.

Article IV, Section 1 of the U.S. Constitution provides:

Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws

---

[6] This section provides:

It shall be the duty of a party who draws in question the constitutionality of any statute in any matter in an appellate court to which the Commonwealth or any officer thereof, acting in his official capacity, is not a party, upon the filing of the record, or as soon thereafter as the question is raised in the appellate court, to give immediate notice in writing to the Attorney General of Pennsylvania of the existence of the question; together with a copy of the pleadings or other portion of the record raising the issue, and to file proof of service of such notice.

Pa. R.A.P. 521(a).

prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.

U.S. CONST., art. IV, §1. "[T]he Full Faith and Credit Clause does not require a state to subordinate its own compensation policies to those of another state." Neff, 624 A.2d at 732-33 (citing Thomas v. Washington Gas & Light, 448 U.S. 261 (1980)).

Pennsylvania's interest is to ensure that disabled workers who are otherwise qualified for benefits under the Act receive those benefits, regardless of an agreement assigning jurisdiction elsewhere. See id. Contrary to Claimant's assertions, he did not contract away a right to which he was otherwise entitled. Although Claimant is a resident of Pennsylvania, he was not injured here. And as discussed above, his employment was not principally localized here. Therefore, Pennsylvania's interest was not undermined because Claimant is not entitled to benefits under the Act for an out-of-state injury based solely on his domicile in Pennsylvania.

Claimant also relies on Allstate Insurance Co. v. Hague, 449 U.S. 302 (1981), for the proposition that application of Alabama law is constitutionally impermissible. In Hague, the U.S. Supreme Court held, in order for the substantive law of a state "to be selected in a constitutionally permissible manner, the state must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." Id. at 312-13 (emphasis added).

19

In Hague, a Wisconsin resident who had three automobile insurance policies was killed in an accident in Wisconsin by an uninsured motorist. The decedent's personal representative filed suit in Minnesota to recover under the uninsured motorist endorsements of the three policies. Minnesota permitted the stacking of policies, while Wisconsin did not. The Supreme Court found three contacts to Minnesota:

> First, ... [the decedent] was a member of Minnesota's work force, having been employed by a Red Wing, Minn., enterprise for the 15 years preceding his death .... [The decedent]'s residence in Wisconsin does not ... constitutionally mandate application of Wisconsin law to the exclusion of forum law.... Second, Allstate was at all times present and doing business in Minnesota. By virtue of its presence, Allstate can hardly claim unfamiliarity with the laws of the host jurisdiction and surprise that the state courts might apply forum law to litigation in which the company is involved.... Third, [the decedent's personal representative] became a Minnesota resident prior to institution of this litigation.

Id. at 313-18. Upon finding the aggregation of contacts was constitutionally sufficient, the Court affirmed the application of Minnesota law. Id.

Here, Claimant maintains the "majority of aggregation of contacts" is in Pennsylvania such that the choice of law of Alabama is not founded in fact and is fundamentally unfair. Pet'r's Br. at 32. Specifically, Claimant maintains: he is domiciled in Pennsylvania, spent most of his time and miles in Pennsylvania, kept his truck in Pennsylvania, was occasionally dispatched from his home in Pennsylvania, received all treatment in Pennsylvania, and went to Alabama only four times for work purposes. Id. at 31-32.

20

Although we recognize Claimant's contacts represent a significant aggregation of contacts, an employer's place of business is also a significant contact. Hague; see also 77 P.S. §411.2(d)(4)(i). Hague merely requires "a significant contact," not a majority of contacts. Id. at 312. As Employer's corporate headquarters and principal place of business are in Alabama, such contact is sufficiently significant that application of Alabama law is neither unfair nor unexpected. See Hague. Moreover, as discussed above, Claimant's employment was not principally localized in Pennsylvania. Thus, we see no constitutional problem with the parties' choice of the workers' compensation laws of Alabama to govern this dispute.

For these reasons, we conclude Section 305.2(d)(5) of the Act does not contravene the Full Faith and Credit Clause of the U.S. Constitution or the purpose of the Act.

## IV. Conclusion

In sum, Claimant was not entitled to benefits in Pennsylvania for an extraterritorial injury because his employment was not principally localized in Pennsylvania. Pursuant to the WC Agreement, Claimant's employment was principally localized in Alabama. The WC Agreement fully conformed with Section 305.2(d)(5) of the Act, and it did not violate public policy. Finally, Section 302.5(d)(5) is not unconstitutionally applied to Claimant here. Thus, the WCJ properly gave the WC Agreement full force and effect in determining Pennsylvania lacks jurisdiction over Claimant's claim.

21

Accordingly, we affirm.

_____

ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William Watt,                :
              Petitioner     :
                            :
        v.                :    No. 53 C.D. 2015
                            :
Workers' Compensation Appeal    :
Board (Boyd Brothers Transportation),   :
            Respondent    :

## **O R D E R**

**AND NOW**, this 15th day of September, 2015, the order of the Workers' Compensation Appeal Board is **AFFIRMED**.

_____
ROBERT SIMPSON, Judge