**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

COURTNEY PEREZ,

                Appellant,

        v.

THE DEPARTMENT OF LABOR &
INDUSTRIES; and DIGITAL
CONTROL, INC.,

                Respondents.

No. 84864-0-I

DIVISION ONE

ORDER GRANTING
MOTION TO PUBLISH

Respondent the Department of Labor and Industries moved to publish the court's opinion filed on December 4, 2023. Appellant Courtney Perez has not filed a response. The court has determined that the motion should be granted.

Therefore, it is

ORDERED that the opinion should be published. The opinion shall be published and printed in the Washington Appellate Reports.

FOR THE COURT:

_____Mann, J._____

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

COURTNEY PEREZ,

                Appellant,

        v.

THE DEPARTMENT OF LABOR &
INDUSTRIES; and DIGITAL
CONTROL, INC.,

                Respondents.

No. 84864-0-I

DIVISION ONE

PUBLISHED OPINION

MANN, J. — After Julian Perez Ortega was killed in a work-related accident, his wife, Courtney Perez, applied for survivor workers' compensation under the Industrial Insurance Act (IIA), Title 51 RCW. The Department of Labor and Industries (Department) denied her claim. The denial was affirmed by the Board of Industrial Insurance Appeals (Board) and the superior court. Perez appeals and argues that the superior court erred in finding Perez Ortega's employment was principally localized in Indiana. We affirm.

I

Perez Ortega began his employment with Digital Control, Inc. (DCI) in 1998. DCI is a Washington corporation, headquartered in Kent, Washington, that engineers and

manufactures electronic guidance systems for horizontal directional drilling. When Perez Ortega started at DCI he signed an employment agreement. The employment agreement is governed by the laws of the State of Washington.[1]

Perez Ortega started as a production assembler, transitioned to customer service, and then held multiple territory manager roles, first in Florida, then in California. In 2007, Perez Ortega became the Midwest Territory Manager. Territory managers are required to live somewhere within their assigned territory but are also "home office" based. The Midwest territory mainly includes Indiana, Illinois, Michigan, Missouri, and Kansas, with occasional travel to other states in the Midwest. Perez Ortega and his family relocated to Indiana and have lived there ever since.

Perez Ortega's position required him to travel within the territory up to 50 percent of the time. His job responsibilities included, among others, managing relationships with dealers and customers; providing training, technical support, and customer service; giving presentations, demos, and trainings; performing field testing and troubleshooting company products; and handling customer service phone calls, questions, and general trouble-shooting issues. Because of his fluency in Spanish, Perez Ortega also served DCI's small South American market.

In April 2018, Perez Ortega accepted an offer to become DCI's North American Field Manager. In this role, all of DCI's territory managers reported to Perez Ortega. Perez Ortega remained responsible for the Midwest and South America territories. This position also required the ability to travel up to 50 percent of the time and otherwise

---

[1] The agreement does not say where Perez Ortega's employment would be principally localized, nor does it identify which state's workers' compensation law would apply to work-related injuries.

work from home. When not travelling, Perez Ortega was expected to communicate with customers, and, as part of his supervisory responsibilities, check in with other territory managers.

In late July 2018, Perez Ortega was struck by a motor vehicle while working for DCI at a construction site in Michigan. Perez Ortega died from his injuries.

After Perez Ortega's death, Perez submitted a claim for survivor workers' compensation with the Department. The Department denied her claim, finding that Perez Ortega was not a Washington worker at the time of the injury and was not covered under the IIA. Perez appealed to the Board.

After cross motions for summary judgment, the industrial appeals judge (IAJ) issued a proposed decision and order affirming the Department. The IAJ found that Perez Ortega's work was principally localized in Indiana. Perez petitioned for review of the IAJ's decision by the Board. The Board adopted the IAJ's proposed decision as its final decision.

Perez appealed the Board's decision to King County Superior Court. The superior court affirmed the Board's decision, concluding that the Board had not erred in finding that Perez Ortega's work was principally localized in Indiana.[2]

Perez appeals.

---

[2] The superior court agreed with Perez that Perez Ortega was working under a contract of hire made in Washington. The parties do not challenge this conclusion.

II

A

The IIA governs judicial review of workers' compensation determinations. Rogers v. Dep't of Lab. & Indus., 151 Wn. App. 174, 179, 210 P.3d 355 (2009). A worker aggrieved by the decision and order of the Board may appeal to the superior court. RCW 51.52.110. The superior court reviews de novo the Board's decision, based only on the administrative record and evidence presented to the Board. RCW 51.52.115; Butson v. Dep't of Lab. & Indus., 189 Wn. App. 288, 295, 354 P.3d 924 (2015). The Board's decision is considered prima facie correct and the opposing party must support its challenge by a preponderance of the evidence. RCW 51.52.115; Eastwood v. Dep't of Lab. & Indus., 152 Wn. App. 652, 657, 219 P.3d 711 (2009).

We review the decision of the superior court rather than the decision of the Board. Birgen v. Dep't of Lab. & Indus., 186 Wn. App. 851, 856, 347 P.3d 503 (2015). The superior court's decision is subject to the ordinary standard of review for civil appeals. RCW 51.52.140; Malang v. Dep't of Lab. & Indus., 139 Wn. App. 677, 683, 162 P.3d 450 (2007). We review "'whether substantial evidence supports the trial court's factual findings and then review, de novo, whether the trial court's conclusions of law flow from the findings.'" Rogers, 151 Wn. App. at 180 (quoting Watson v. Dep't of Lab. & Indus., 133 Wn. App. 903, 909, 138 P.3d 177 (2006)). Substantial evidence is evidence "'sufficient to persuade a fair-minded, rational person of the truth of the matter.'" Potter v. Dep't of Lab. & Indus., 172 Wn. App. 301, 310, 289 P.3d 727 (2012) (quoting R & G Probst v. Dep't of Lab. & Indus., 121 Wn. App. 288, 293, 88 P.3d 413, (2004)). We review the record in the light most favorable to the party who prevailed in

-4-

superior court—the Department. Robinson v. Dep't of Lab. & Indus., 181 Wn. App. 415, 425, 326 P.3d 744 (2014). We do not reweigh the evidence. Value Village v. Vasquez-Ramirez, 11 Wn. App. 2d 590, 596, 455 P.3d 216 (2019). "Statutory interpretations are questions of law reviewed de novo." Kustura v. Dep't of Lab. & Indus., 169 Wn.2d 81, 87, 233 P.3d 853 (2010).

B

Perez argues that Perez Ortega's employment with DCI was not principally localized in any state and so it was error for the superior court to affirm the Board. We disagree.

The IIA broadly provides "sure and certain relief" for workers and their families, injured in their work. RCW 51.04.010. While this generally includes workers who are injured while working out of state, for those workers, coverage is more limited. Washington's extraterritorial statute provides in part:

> (1) If a worker, while working outside the territorial limits of this state, suffers an injury on account of which he or she, or his or her beneficiaries, would have been entitled to compensation under this title had the injury occurred within this state, the worker, or his or her beneficiaries, shall be entitled to compensation under this title if at the time of the injury:
>
> (a) His or her employment is principally localized in this state; or
>
> (b) He or she is working under a contract of hire made in this state for employment not principally localized in any state;

RCW 51.12.120(1).[3] Perez argued below that Washington had jurisdiction under subsection (b) because Perez Ortega was working under a contract of hire made in Washington and his employment was not "principally localized in any state."

Where employment is principally localized is defined by statute. Under RCW 51.12.120(5)(a), there are two ways to determine where a person's employment is principally localized:

> A person's employment is principally localized in this state or another state when: (i) His or her employer has a place of business in this or the other state and he or she regularly works at or from the place of business; or (ii) if (a)(i) of this subsection is not applicable, he or she is domiciled in and spends a substantial part of his or her working time in the service of his or her employer in this or the other state.

While DCI has a place of business in Kent, Washington, Perez Ortega rarely worked there. As a result, RCW 51.12.120(5)(a)(i) is not applicable. Turning to RCW 51.12.120(5)(a)(ii), Perez Ortega was domiciled in Indiana. The issue therefore is whether Perez Ortega spent "a substantial part" of his "working time" in the service of DCI in Indiana. If not, then Perez Ortega's employment was not principally localized in any state and Washington would have jurisdiction.

The meaning of "substantial part" and "working time" in RCW 51.12.120(5)(a)(ii) is a question of law susceptible to judicial review. Gorre v. City of Tacoma, 184 Wn.2d 30, 36 n.2, 357 P.3d 625 (2015). And whether Perez Ortega spent a substantial part of his working time in the service of DCI in Indiana is a fact question reserved for the fact finder.

---

[3] The legislature recently amended RCW 51.12.120. LAWS OF 2023, ch. 88 § 11. Because the amendments do not affect our analysis, we use the current version of the statute.

The goal of statutory interpretation is to determine and give effect to the legislature's intent. Jametsky v. Olsen, 179 Wn.2d 756, 762, 317 P.3d 1003 (2014). To determine legislative intent, we first look to the plain language of the statute. Jametsky, 179 Wn.2d at 762. We consider the meaning of the provision in question, the context of the statute in which the provision is found, and related statutes. Lowy v. PeaceHealth, 174 Wn.2d 769, 779, 280 P.3d 1078 (2012). "If the language is unambiguous, we give effect to that language and that language alone because we presume the legislature says what it means and means what it says." Cent. Puget Sound Reg'l Transit Auth. v. Airport Inv. Co., 186 Wn.2d 336, 346, 376 P.3d 372 (2016).

Perez concedes that the terms are plain on their face. And both Perez and the Department rely on similar definitions of "substantial."[4] Merriam-Webster defines "substantial" as "considerable in quantity." MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/substantial (last visited Aug. 22, 2023).

The parties differ, however, on the definition of "working time." Perez argues that the plain language of the term "working time" only encompasses time spent actually working. Perez asserts that Perez Ortega was just "on call" when in Indiana and because that time is only time spent potentially working, it should be disregarded. We disagree.

Perez cites two cases from Pennsylvania which have a similar extraterritorial coverage statute and definition of "principally localized." See 77 PA. STAT. AND CONS. STAT. ANN. § 411.2. In both cases the claimant was a truck driver. First, in Watt v.

---

[4] Perez uses the following definition of substantial, "of ample or considerable amount, quantity, size, etc." While the Department uses "considerable in amount, value, or worth."

Workers' Compensation Appeal Board, 123 A.3d 1155, 1161 (Pa. Commw. Ct. 2015), the court compared the time and miles the claimant spent in Pennsylvania with the total time and miles he spent driving. While the claimant spent more time, 19 percent, and drove more miles, 17 percent, in Pennsylvania than any other state, it was only slightly higher than other high totaling states, like Ohio 10 percent and 13 percent respectively, and Virginia 12 percent and 14 percent. Watt, 123 A.3d at 1161-62. The court found that the claimant did not spend a substantial part of his working time in Pennsylvania because it was only a fraction of his total time. Watt, 123 A.3d at 1161-62.

Second, in Williams v. Workers' Compensation Appeal Board, 4 A.3d 742, 747 (Pa. Commw. Ct. 2010), the court explained, "Determining what a substantial part is requires a comparison with the working time spent elsewhere." In Williams, the claimant spent 38 percent of his time driving in Pennsylvania, 32 percent in Ohio, and the remaining 30 percent in 19 other states. 4 A.3d at 747. The court held the statute does not require a majority of time be spent in the state but only a substantial part, and because the claimant spent 6 percent more time in Pennsylvania than the next most traveled state, and 38 percent of his time overall, he spent a substantial part of his work time driving in Pennsylvania. Williams, 4 A.3d at 747-48. Significantly, the Williams court also found, "It is indisputable that time spent driving is work time as Claimant was paid by the mile. He was not paid by the load or any other method. When not driving, Claimant was not generating earnings." Williams, 4 A.3d at 747.

"Working time" in both Watt and Williams was time spent driving as both were paid by the mile. 123 A.3d at 1157; 4 A.3d at 747. Unlike the claimants in Watt and Williams, Perez Ortega was a salaried employee. In a different context, our Supreme

Court has explained that "[s]alary is a mark of executive status because the salaried employee must decide for himself the number of hours to devote to a particular task . . . The salaried employee decides for himself how much a particular task is worth, measured in the number of hours he devotes to it."  Drinkwitz v. Alliant Techsystems, Inc., 140 Wn.2d 291, 302, 996 P.2d 582 (2000) (citing Brock v. Claridge Hotel & Casino, 846 F.2d 180, 184 (3d Cir. 1988)).  Significantly, "it is reasonable for an employer to expect that a full-time salaried employee's work-related responsibilities will occupy a normal workweek."  Drinkwitz, 140 Wn.2d at 302.

Washington has also applied a U.S. Department of Labor regulation that defines "payment on a salary basis":

> An employee will be considered to be paid 'on a salary basis' . . . if . . . he regularly receives each pay period . . . a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed . . . [T]he employee must receive his full salary <u>for any week in which he performs any work without regard to the number of days or hours worked</u>.  This policy is also subject to the general rule that an employee need not be paid for any workweek in which he performs no work.

Drinkwitz, 140 Wn.2d at 299 (quoting former 29 C.F.R. § 541.118(a) (1975)) (emphasis added).

Perez insists that to properly compare the time Perez Ortega spent in other states, DCI should have had to quantify the time Perez Ortega spent "actually working" in Indiana.  She insists that anything less than a full eight-hour day should not count.  We disagree.

As a salaried employee, Perez Ortega was not required to specifically track his time.  But he was expected to work Monday through Friday or take leave.  When not

travelling, Perez Ortega was still generating earnings. While Perez repeatedly argues that "on call" time should not count as "working time," in this context Perez Ortega was expected to be responsive to the needs of DCI's customers and vendors, and his co-workers. As a salaried employee, being "on call" meant he was working. He was paid for every work day that he was outside of Indiana and for every work day that he was in Indiana, no matter how many hours he worked. Thus, an hour by hour comparison of Perez Ortega's time on the road versus working from home was not required.

While the working time of the truck drivers in <u>Watt</u> and <u>Williams</u> was easily quantifiable because they were paid by the mile, Perez Ortega's working time as a salaried employee is also easy to quantify—because he was paid the same amount whether he was travelling or working from home in Indiana.

Based on these facts, Perez Ortega's "working time" as a salaried employee was the time that he was paid for and not on paid time off.

C

Perez specifically assigns error to the trial court's findings of fact 1.5, 1.12, and 1.13. Perez mainly argues that the findings are immaterial, irrelevant, and do not support concluding that Perez Ortega spent a substantial amount of his working time in Indiana. We address each.[5]

---

[5] Perez also argues that the superior court erred by entering findings of fact 1.14 and 1.15 because they pertain to the superior court's earlier ruling on summary judgment that Perez Ortega's contract of hire was made in Washington. Perez argues that "findings of fact on summary judgment are not proper, are superfluous, and are not considered by the appellate court." <u>Hemenway v. Miller</u>, 116 Wn.2d 725, 731, 807 P.2d 863, 867 (1991). We agree with Perez that these two findings of fact are superfluous, regardless the conclusion of law that the contract of hire was made in Washington has not been appealed.

1

Finding of fact 1.5 states, "[a]t all times relevant, DCI recorded Mr. Perez Ortega's employment in the State of Indiana for workers' compensation, unemployment, and tax purposes."[6]  Perez argues that finding of fact 1.5 is true but not supported by substantial evidence.  This is so, Perez contends, because substantial evidence must be admissible and the evidence of his coverage by the State of Indiana was irrelevant and inadmissible.

Perez moved in limine to exclude evidence that Perez Ortega was insured in another state and that Perez had applied for and received benefits from another state.  The IAJ agreed that the evidence should be excluded, but the IAJ allowed the parties to ask questions on this subject in colloquy to preserve factual evidence for potential future motions or requests of the Board.  But the fact that DCI paid for worker's compensation for Perez Ortega in Indiana was admitted as exhibit 4.  Perez did not object to admission of exhibit 4.  And Department witness Christina Alcatraz testified that DCI covered Washington workers in Washington state, and covers Perez Ortega in Indiana without objection from Perez.

"A party is obligated to renew an objection to evidence that is the subject of a motion in limine in order to preserve the error for review."  City of Bellevue v. Kravik, 69 Wn. App. 735, 742, 850 P.2d 559 (1993) (citing Sturgeon v. Celotex Corp., 52 Wn. App. 609, 623, 762 P.2d 1156 (1998)).  Because Perez failed to renew her objection when the evidence was introduced, Perez waived any possible error and the superior court

---

[6] Finding of fact 1.5 states in full, "[o]n and around July 31, 2018, DCI was a State of Washington corporation, headquartered in Kent, Washington.  At all times relevant, DCI recorded Mr. Perez Ortega's employment in the State of Indiana for workers' compensation, unemployment, and tax purposes."

could rely on the evidence because it was part of the Board's record.  <u>Malang</u>, 139 Wn.
App. at 683.

Thus, we conclude that finding of fact 1.5 is supported by substantial evidence.

2

Finding of fact 1.12 states:

A preponderance of evidence supports that from 2017 through July 31, 2018, Mr. Perez Ortega spent a substantial part of his working time in the service of DCI in the State of Indiana.  At all times relevant, Mr. Perez Ortega resided in Indiana, he was a salaried worker that was required to be available 24 hours per day, he worked from home in the State of Indiana, he worked with customers in the field in the State of Indiana, he traveled in and around the State of Indiana for work related travel, and he maintained and rented a storage unit for work equipment in the State of Indiana.

Perez asserts that the first sentence is a conclusion of law and the finding is "bereft of
any explication as to what that evidence is."

As discussed above, whether Perez Ortega spent a substantial part of his
working time in the service of DCI in Indiana is a fact question reserved for the fact
finder.  And, within the finding, the superior court listed the evidence it relied on to make
that finding.  This is not a conclusion of law.

Perez does not seriously contend that substantial evidence does not support the
subsequent findings, conceding that substantial evidence supports finding Perez Ortega
worked from home in Indiana, that he was a salaried worker required to be available 24
hours per day, that he worked with customers in Indiana, and traveled in and around
Indiana for work-related travel.

And while Perez does not concede the fact that Perez Ortega "maintained and
rented a storage unit for work equipment in the State of Indiana" is supported by

substantial evidence, she does acknowledge it as a fact, just not one that is relevant to conclude that Perez's employment was principally localized in Indiana. But this finding is supported by substantial evidence. Perez testified that Perez Ortega had a storage unit in Indiana, it only contained DCI property, and DCI reimbursed Perez Ortega for the cost of the storage unit. DCI Chief of Staff Matt Mercer testified similarly.

Thus, we conclude that finding of fact 1.12 is supported by substantial evidence.

3

Perez argues the superior court erred by concluding that Perez Ortega's work was principally localized in Indiana because it "does not flow" from the findings that were made. Perez challenges finding of fact 1.13 which states, "[a] preponderance of evidence supports the Board's finding that on July 31, 2018, Mr. Perez Ortega's work with DCI was principally localized in the State of Indiana." While we agree that this finding 1.13 is a conclusion of law that we review de novo, the trial court's conclusion that Perez Ortega's employment was principally localized in Indiana is supported by the findings.

Perez Ortega's employment was principally localized in Indiana if he was domiciled in Indiana and spent a substantial part of his working time in the service of DCI in Indiana. RCW 51.12.120(5)(a)(ii). Perez Ortega was domiciled in Indiana.

As discussed above, Perez concedes that substantial evidence supports finding that Perez Ortega was a salaried employee, that he worked from home in Indiana, that he was required to be available 24 hours a day, that he worked with customers in Indiana, traveled in and around Indiana for work-related travel, and maintained a storage unit for work equipment in Indiana.

In addition, DCI presented evidence that in 2017 Perez Ortega worked 247 days for DCI, not including holidays and paid time off. Of those days, Perez Ortega worked from home in Indiana 128 days, or 52 percent of the time. In 2018, Perez Ortega worked 146 days for DCI. And 56 of those days were worked in Indiana, 38 percent of the time. While Perez Ortega travelled extensively, during that time he spent no more than 9 percent of the time in any other state.

DCI provided Perez Ortega with a vehicle, a phone, and a laptop. DCI also paid a portion of the home internet in 2017 and 2018. And Perez testified that Perez Ortega,

> always had his phone on him. So even if he was out in the yard mowing and his phone rang, he would take the call. If someone would e-mail or text, he would respond to it. So regardless of if he was at a baseball game or whatever we were doing, even on vacations, he would take the call.

The substantial evidence standard is highly deferential to the fact finder; and we do not weigh the evidence or substitute our judgment for the fact finder's judgment. See Chandler v. Office of Ins. Comm'r, 141 Wn. App. 639, 648, 173 P.3d 275 (2007). Viewing the evidence in the light most favorable to the Department, we conclude that substantial evidence supports the superior court's finding that Perez Ortega spent a substantial part of his working time in Indiana and that finding supports the conclusion that Perez Ortega's employment was principally localized in Indiana.

D

Perez next argues that the superior court erred in considering the testimony of Department witness Christina Alcatraz. We disagree.

Perez first asserts that the Board erred in refusing to exclude Alcatraz's testimony as a discovery sanction. Perez attempts to incorporate by reference her prior

-14-

arguments to the Board. "We do not permit litigants to use incorporation by reference as a means to argue on appeal or to escape the page limits for briefs set forth in RAP 10.4(b)." Diversified Wood Recycling, Inc. v. Johnson, 161 Wn. App. 859, 891, 251 P.3d 293 (2011) (citing Kaplan v. Nw. Mut. Life Ins. Co., 115 Wn. App. 791, 801 n.5, 65 P.3d 16 (2003)).

Perez next asserts it was error to consider Alcatraz's testimony because it was an impermissible legal conclusion. Perez specifically points to two pieces of testimony. First, Alcatraz testified that the Department's decision to reject Perez's claim was correct because the Department did "not have jurisdiction over this worker at the time of his injury." Second, Alcatraz testified, "it was our finding that Mr. Perez Ortega was principally localized in the state of Indiana at the time of his injury." While the first statement may be an opinion on a legal conclusion, the second is a factual statement about the Department's determination in this case.

When Perez objected to the first statement, the ALJ overruled the objection and explained:

> I view this more as the Department's position on explaining its actions, which it can do if it wishes to do so. And I do not view this opinion as a precedent-setting legal opinion that I have to follow. I'll make the determination of the meaning and quality of weight with regard to statutory matters.

It is clear from the record that the ALJ recognized its role and disregarded potentially inadmissible legal conclusions made by this witness. And the superior court could rely on the testimony because it was part of the Board's record. Malang, 139 Wn. App. at 683. Thus, the superior court did not err by considering this testimony.

We affirm.[7]

_Mann, J._

WE CONCUR:

_Coburn, J._

_Brennan, J._

---

[7] Perez requests attorney fees under RCW 51.52.130, which provides a fixed fee for workers or their beneficiaries, who receive additional relief on appeal. Because Perez does not receive additional relief on appeal, she is not entitled to fees on appeal.